UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------X
EMILE DIXON,

                   Petitioner,

    -against-

UNITED STATES OF AMERICA,

                   Respondent.
---------------------------------------------------X

**MEMORANDUM & ORDER**

07 CV 829

DEARIE, Chief Judge.

    Petitioner, pro se, moves pursuant to 28 U.S.C. § 2255 to vacate his conviction. For the reasons set forth below and in the government's memorandum in opposition, the application is denied, and the petition is dismissed.

**Background**

    In this capital case, petitioner was charged and convicted, after a jury trial, of racketeering and racketeering conspiracy, murder and conspiracy to murder in aid of racketeering, obstruction of justice murder, murder in furtherance of narcotics trafficking, conspiracy to distribute and possess with intent to distribute cocaine and cocaine base, distribution and possession of cocaine and cocaine base, and several firearms offenses. At the conclusion of the penalty phase, the jury was unable to reach a unanimous verdict on the capital counts. Accordingly, on May 17, 2004, this Court sentenced petitioner to life in prison. He appealed, principally challenging the sufficiency of the evidence on various counts. The Second Circuit affirmed the judgement of conviction and sentence on February 16, 2006.

    Petitioner's conviction arose from his activities in the "Patio Crew," a vicious gang of Jamaican nationals that controlled a neighborhood in Flatbush, Brooklyn for over a decade. The

Patio Crew's criminal activities included murder, drug trafficking and robbery of other drug dealers within and beyond the borders of New York City, including Texas, South Carolina, Virginia, North Carolina and Connecticut. In July of 1999, Patio Crew member Humphrey Stewart shot rival drug dealer Robert "Ragga" Thompson. Thompson identified Stewart, and Stewart was arrested in the Spring of 2000 on local charges in Brooklyn. Petitioner threatened to kill Thompson if he continued to cooperate in Stewart's prosecution. Thompson was undeterred, however, until on July 26, 2000, petitioner murdered him in a drive-by shooting.

Over two years later, on August 8, 2002, petitioner was chased down by detectives as he was leaving his girlfriend's home in Brooklyn. The police recovered a loaded firearm that he discarded during the chase and, following the execution of a search warrant, seized large quantities of crack cocaine and cocaine from a secret compartment in the dashboard of his car. Petitioner was initially arrested on state charges for Thompson's murder. Federal indictments brought charges of obstruction of justice murder, racketeering, narcotics trafficking and other crimes including the 1992 drug-related murder of Alphonso Gooden.

Petitioner now seeks collateral relief on five grounds, two of which relate to the effectiveness of trial counsel. He argues that counsel was ineffective for preventing him from testifying and for acknowledging that he was involved with guns and in selling drugs during his youth. In addition, he contends that prior bad acts evidence was improperly admitted, the Court lacked jurisdiction, and the indictment was multiplicitous. Petitioner did not raise any of these claims on appeal.

**Discussion**

Claims not raised on direct appeal are procedurally defaulted and cannot be reached on collateral review absent cause for the default and prejudice, or actual innocence. See Massaro v. United States, 538 U.S. 500, 504 (2003) (citing United States v. Frady, 456 U.S. 152, 167-68 (1998) and Bousley v. United States, 523 U.S. 614, 621-22 (1998)). Claims of ineffective assistance of counsel, however, are not subject this procedural default rule. See Massaro, 538 U.S. at 504 (ineffective assistance of counsel claims may be brought in the first instance in a § 2255 petition, "whether or not the petitioner could have raised the claim on direct appeal"). Nevertheless, Strickland v. Washington, 466 U.S. 668 (1984), requires that petitioner show both (1) that counsel's performance "fell below an objective standard of reasonableness," id. at 688, and (2) that petitioner was prejudiced by the deficient performance, id. at 692, to secure relief. To satisfy the prejudice prong, petitioner "must show more than that the unprofessional performance merely 'had some conceivable effect.'" Id. at 693. He must demonstrate "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. Petitioner cannot meet this standard.

Petitioner's assertion that he was prevented by counsel from testifying is both contradicted by an affidavit from one of his trial attorneys, Ephraim Savitt, and belied by the record. Petitioner was an active participant in his defense and did not hesitate to bring issues he had with counsel to the attention of the Court, yet he never indicated that he disagreed with counsel with respect to taking the stand. Just prior to opening statements, petitioner addressed the Court directly to state that he was "no longer happy" with his lawyers and felt that he was not

3

"being represented effectively." (Tr. at 4.) He elaborated, without adding any real detail, stating: "I don't feel like my constitutional rights is being defended in the manner that it should be defended." (Id. at 5.) Further, when the Court indicated that the trial would begin that day, either with petitioner's current counsel or without representation if petitioner so chose, he did not elect to dismiss them. (Id. at 6.) Petitioner said nothing when the Court asked counsel about their witnesses on the morning the defense case began (id. 2422), nothing after the government rested (id. at 2432-34), nothing when the Court inquired whether defense counsel had called its final witness (id. at 2698), and nothing the following morning when the defense rested, (id. at 2730). In stark contrast, when he disagreed with counsel's proposed strategy to offer mitigating evidence regarding his childhood during the penalty phase, he informed the Court that if counsel attempted to present such evidence, he would dismiss counsel and represent himself. This Court credits Mr. Savitt's affidavit and concludes that petitioner's decision not to take the stand was his own, reached after numerous discussions with counsel.

Petitioner has also failed to satisfy the Strickland prejudice prong. Both in his petition and his reply, he essentially contends that there was a "thing" or "things" that only he could have explained to the jury as to why the government charges were not "true." (Petition at 3; Traverse at 7.) Whatever unspecified explanation petitioner might have offered, there is no reasonable probability that his self-serving testimony would have altered the outcome of the proceeding. The evidence against petitioner included the testimony of multiple cooperating witnesses from the Patio Crew, eyewitness identifications of petitioner and corroborating ballistics and crime scene evidence with respect to the Thompson and Gooden murders, testimony regarding petitioner's public threats against Thompson and his own admissions regarding the Thompson

4

murder to government witness Mark Murant.  In short, the evidence was overwhelming.

Counsel's performance was diligent and skillful in every sense.  Petitioner, nevertheless, attacks counsel's effectiveness on the ground that he admitted in his opening statement that petitioner "in his younger years . . . was involved in some drug dealing" and "plead guilty to gun charges."  Counsel's decision to concede to petitioner's involvement in these activities and focus the jury instead on the adequacy of the government's proof of the existence of a racketeering enterprise and the credibility of the cooperating witnesses, themselves violent criminals, falls easily within the realm of reasonable trial strategy, particularly in a capital prosecution. Furthermore, in light of the overwhelming case against petitioner, counsel's concession of the obvious could not possibly have resulted in prejudice.

Petitioner's remaining claims are all procedurally defaulted, and petitioner makes no showing to overcome the default.  In any case, they warrant little discussion.  There was no error in admitting the uncharged crimes evidence; the evidence was relevant to, and intertwined with, the charged offenses, the racketeering activity and the existence of a RICO enterprise.  Moreover, the indictment properly charged separate counts of racketeering, racketeering conspiracy, narcotics conspiracy and narcotics distribution and was not multiplicitous.  Each offense charged required proof of a different element not part of the other charges.  Finally, the existence of pending state charges against petitioner for Thompson's murder at the time he was charged federally has no impact on this Court's jurisdiction.

## Conclusion

Petitioner's motion for relief pursuant to 28 U.S.C. § 2255 is denied, and the petition is dismissed.  Because petitioner has not "made a substantial showing of the denial of a

constitutional right," 28 U.S.C. § 2253(c)(2), a certificate of appealability shall not issue. In addition, this Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith. Coppedge v. United States, 369 U.S. 438 (1962). The Clerk of the Court is directed to close this case.

SO ORDERED.

Dated: Brooklyn, New York
      August 18, 2010                                       s/ Judge Raymond J. Dearie
                                                                          _____
                                                                          RAYMOND J. DEARIE
                                                                          United States District Judge